IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

**ANTHONY FUGATE, CHAD CHAMBERS,**
*and* **GIDGET THOMAS,**

Plaintiffs,

v.   No. 1:23-cv-0189-TAV-SKL

**METRO TRANSPORT GROUP, LLC,**
**BEN PETRILLO** *and* **SEAN MCDONAGH,**
*Individually,*

**JURY DEMANDED**

Defendants.

**MEMORANDUM IN SUPPORT OF JOINT
MOTION FOR SETTLEMENT APPROVAL
(ECF #22)**

Following arms-length negotiations, Named Plaintiffs Anthony Fugate, Chad Chambers, and Gidget Thomas ("Named Plaintiffs"), and Defendants Metro Transport Group, LLC, Ben Petrillo, and Sean McDonagh. ("Defendants") (collectively "the Parties") have reached a proposed settlement in the above-captioned case. The Parties respectfully request that the Court approve the proposed settlement of this Fair Labor Standards Act ("FLSA") action seeking overtime compensation and dismiss this case with prejudice. As detailed below, the Court should grant the Parties' Motion because this settlement is a fair, adequate, and reasonable resolution of the Parties' *bona fide* dispute as to liability and damages under the FLSA. Plaintiffs also seek what they believe is an award of reasonable attorneys' fees, costs, and expenses.

1

# BACKGROUND

I.  **Relevant procedural and factual history.**

Defendant Metro Transport Group, LLC is a carrier that operates a fleet of sprinter vans, cargo vans, straight trucks, and tractor trailers as well as warehousing operations and 3PL services. Plaintiffs allege Defendants Petrillo and McDonagh exercised operational control over Defendant Metro Transport Group, LLC. Plaintiffs are former employees of Defendant and worked as non-exempt hourly paid Dispatchers. On August 25, 2023, Named Plaintiffs, individually and on behalf of other individuals alleged to be "similarly-situated", filed a putative collective action FLSA lawsuit against Defendant.[1] The Complaint identified a group of allegedly similarly-situated individuals: all of Defendant's hourly-paid non-exempt dispatchers. The Complaint alleges that Plaintiffs were misclassified as salary-exempt employees, worked through all or part of automatically deducted meal breaks throughout their employment with Defendants, and had their hours edited in an attempt to avoid paying Plaintiffs overtime. On October 5, 2023, Parties filed a Stipulation for an Extension of Time to File an Answer to Plaintiffs' Complaint to explore settlement.[2] After two months of trying to explore a settlement, the Parties were unable to do so and the Defendants filed an answer to the Plaintiffs' Complaint denying their allegations.[3] During the course of exploring settlement, facts came to light that required Plaintiffs to amend their Complaint, and Plaintiffs filed a Motion for Leave to File First Amended Complaint.[4] After the Court granted the Plaintiffs' Motion for Leave, the Plaintiffs filed their

---

[1] Complaint, ECF No. 1.
[2] Stipulation of Extension of Time to File Answer, ECF No. 8.
[3] Answer, ECF No. 12.
[4] Motion for Leave to File First Amended Complaint, ECF No.19

First Amended Complaint adding Ben Petrillo and Sean McDonagh as individual Defendants and removing the collective claim.[5] After several more months of settlement negotiations that included Defendants producing Plaintiffs' time and pay records for analysis, the Parties notified the Court that they had reached an agreement in principle on June 24, 2024.[6] The Settlement Agreement states that Defendants shall pay a total gross amount of twenty-eight thousand dollars ($28,000.00) of which Plaintiffs will receive twelve-thousand dollars ($12,000) and Plaintiffs' counsel will receive sixteen-thousand dollars ($16,000). A check for ten thousand dollars ($10,000) will be made payable to Plaintiffs' counsel ten (10) days after Court approval of the settlement. In addition, another check for one thousand five hundred dollars ($1,500) will be made payable to Plaintiffs' counsel ten (10) days after the Court approval, and thirty (30) days thereafter, and so on, until the full amount of payment has been satisfied. [7]

## ARGUMENT

The Parties have reached a settlement and agreed on the terms of a written settlement agreement. The settlement fairly, adequately, and reasonably resolves the Plaintiffs' claims, takes into consideration Defendants' defenses, and the Court should enter an order approving the settlement.[8]

**I.    The proposed settlement appropriately resolves the Parties' claims and defenses.**

---

[5] First Amended Complaint, ECF No. 21
[6] Joint Motion for Settlement Approval, ECF No. 22.

[7] There was a error in paragraph 1.2 of the Settlement Agreement & FLSA Release, ECF No. 22-1 which left out Five Hundred from the amount. The amount agreed upon by Parties is one thousand five hundred dollars ($1,500).

[8] For purposes of settlement only, Defendants have agreed not to contest the statements made in the Joint Motion for Settlement Approval or this supporting Memorandum. However, Defendant does not waive, and expressly reserves, any defenses or denials that certification or notice is proper in this case should the Court not approve the settlement, or the settlement not be perfected.

3

### A. Standard for approval of settlement of FLSA collective actions.

Employees can settle and release claims under the FLSA in two ways. First, the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under § 216(b), an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Id.*

In reviewing a settlement of a private FLSA claim, the Court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *see also Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Wills v. Cellular Sales of Tenn., LLC*, No. 12-391, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014); *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13-2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### B. A *bona fide* dispute exists over liability and damages.

4

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010). The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.*; *Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

A *bona fide* dispute exists in this case. Defendants asserted and continue to assert, that they had reasonable grounds to believe they were in full compliance with the FLSA at all times and acted in good faith and not in violation—willful or otherwise—of the FLSA at any time relevant to this action. What is in dispute is whether the Plaintiffs were properly classified as exempt from overtime and whether they worked uncompensated hours and if so, whether Defendants were aware of and/or responsible for the uncompensated hours. *See, e.g., White v Baptist Memorial Health Care Corp.,* 699 F. 3d 869 (6th Cir. 2012), *cert. denied*, 134 S.Ct. 296 (2013). The Parties both agree that there is risk for both sides. Plaintiffs and their counsel believe that the total settlement amount reflects a reasonable compromise of the claimed damages. Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expense associated with full-blown litigation and discovery and the uncertainty of decertification briefing, dispositive motion practice, and trial, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendants in exchange for a release of claims by Named Plaintiffs to avoid the time and expense inherent in continued litigation. *See*

5

*Lynn's Food Stores*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### C. The settlement is fair and reasonable.

In addition to resolving a *bona fide* dispute between the Parties, Plaintiffs and their counsel believe that the settlement achieved is fair, adequate, and reasonable and should be approved for numerous reasons. First, the proposed settlement arises out of an action for wages brought by the Named Plaintiffs against their employer, Defendant Metro Transport Group, LLC. While the amount each individual ultimately receives depends on the number of weeks worked and amount of time he or she worked for Defendant during the limitations period applicable to each of them, the amount in the Settlement Agreement is reasonable considering that, among other risks: (1) Named Plaintiffs are not highly-compensated employees; and (2) Defendants face defense costs and potential liability exposure if this litigation continues.

Second, there is no evidence of, nor was there any fraud or collusion that occurred between counsel. *See Schneider v. Goodyear Tire & Rubber Co.*, No. 13-2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2015) (considering the risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties had engaged in court-supervised negotiations, there was no such risk). This settlement was reached as a result of arms-lengths negotiations after extensive settlement negotiations between the Parties through experienced attorneys.

Third, during the litigation and settlement of this action, the Plaintiffs were represented by counsel both respected in the community and experienced in handling wage and hour

6

actions. Plaintiffs' counsel has the experience to assess the risks of continued litigation and benefits of settlement and have done so in this action. Plaintiffs' counsel represents employees with claims against employers similar to the claims asserted in this case. Defense counsel is likewise experienced in defending similar claims. Counsel for both Parties have advised their respective clients regarding the settlement, and they have recommended seeking judicial approval: the Court should afford those recommendations some weight. *See Lynn's Food Stores*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Fourth, the range of possible recovery in this case was uncertain. As noted above, the Parties had very divergent positions on the merits of the claims at issue, as well as on damages components such as whether liquidated (double) damages were appropriate and whether Defendants acted willfully.

Fifth, the proceedings have advanced to a stage sufficient to permit the Parties and their experienced counsel to collect, obtain, and review evidence, evaluate their claims and defenses, understand the scope of potential damages, and engage in negotiations with the mutual understanding that continuing toward additional formal discovery and completing dispositive motion practice would be a difficult, costly, and uncertain undertaking.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair, adequate, and reasonable. Without question, if the case had not settled, the Parties would have spent significant time and resources completing written and preparing discovery. Similarly, if this case had not settled, the Parties would have spent significant time taking depositions and drafting dispositive motions: both Parties would likely have sought summary judgment. After

7

the resolution of these issues, the Parties may have faced the prospect of an expensive, lengthy jury trial as well as likely appeals and post-trial motions. Rather than take this path, the Parties directed their efforts toward an early, informed, efficient resolution of the claims. The settlement eliminates the inherent risks both sides would bear if this case were to continue. Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

Moreover, the specific back pay settlement amounts proposed by the Parties reflect a reasonable apportionment of a settlement based on the respective number of workweeks worked by the Named Plaintiffs in which overtime was mathematically possible. These calculations are the result of detailed work by counsel.

**Plaintiffs' requested attorneys' fees and costs are fair and reasonable.**

An attorney's fee award must be reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). A fee is reasonable if it is adequately compensatory to attract competent counsel, but does not produce a windfall for attorneys. *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 893 (1984)). Courts in the Sixth Circuit have discretion to select the method for calculating a fee award, which include the lodestar and common fund method. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515 (6th Cir. 1993). In this case, the Court should approve the attorneys' fees and costs sought by Plaintiffs' Counsel, calculated using the lodestar and agreed to by Defendants.

First, Plaintiffs' Counsel obtained a result that compensates Plaintiffs for approximately 50% of the unpaid overtime and liquated damages claimed by Plaintiffs, for a three-year look back at the Plaintiff's individual overtime rate of pay.

Second, in light of the circumstances, Plaintiffs' Counsel's fee of $16,000, which includes expenses and costs incurred in this case, is more than fair and reasonable compensation for a

8

resolution of this matter. Named Plaintiffs' agreement for legal services with Counsel provides for payment of 33.33% of the settlement amount or the firm's lodestar amount, whichever is greater. The $16,000 amount agreed to is in line with the firm's lodestar amount. See attached *Exhibit 1*. ("Bryant Declaration").

Courts in this district have recognized the fairness and reasonableness of similar fee awards under similar circumstances. See *Edwards v. Sumiriko Tenn.,, Inc*. E.D. Tenn 2020, Civil Action No. 3:20-cv-00083-TRM-dcp, ECF No. 43.

Finally, Plaintiffs' Counsel bore a significant risk of nonpayment in this case if Defendants prevailed on the merits. Plaintiffs agreed to be represented by Plaintiffs' Counsel on a contingency fee basis, and bore the risks associated with a contingency fee agreement.

## **CONCLUSION**

This FLSA settlement is a product of an arms-length negotiation between counsel and it resolves a *bona fide* dispute over Plaintiffs' FLSA claims. The settlement is fair, adequate, reasonable, achieved in an adversarial context, and provides Named Plaintiffs with monetary relief that they and their counsel deem significant. Accordingly, Plaintiffs respectfully request that this Court approve the Parties' settlement (including the agreed-to settlement agreement) and the distribution of the settlement payments contemplated by the Parties to Plaintiffs in full as described above and as set forth in the Settlement Agreement Furthermore, Plaintiffs respectfully request that the Court award as reasonable the attorneys' fees and litigation costs and expenses in the amount requested above. Finally, Plaintiffs request that this action be dismissed with prejudice upon the Court's entry of an order approving the settlement.

**JOINTLY SUBMITTED:**

*/s/J. Russ Bryant*
J. Russ Bryant (TN BPR #33830)
**JACKSON SHIELDS YEISER HOLT OWEN & BRYANT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Tel: (901) 754-8001
Fax: (901) 759-1745
*rbryant@jsyc.com*

*Attorneys for Plaintiffs*

*s/Marshall W. Stair by JRB*
Marshall W. Stair, Esq. (BPR # 027556)
**LEWIS THOMASON, P.C.**
900 S. Gay Street, Suite 300
P.O. Box 2425
Knoxville, TN 37901-2425
*mstair@lewisthomason.com*
Phone: (865) 541-5291
Fax: (865) 523-6529

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024 a true and correct copy of the foregoing has been served on the following individuals consenting to electronic service by operation of the Court's electronic filing system:

>Marshall W. Stair, Esq.
>Kyle Andrew Baisley, Esq.
>LEWIS THOMASON, P.C.
>900 S. Gay Street, Suite 300
>P.O. Box 2425
>Knoxville, TN 37901-2425
>*mstair@lewisthomason.com*
>Phone: (865) 541-5291
>Fax: (865) 523-6529
>*Attorneys for Defendants Metro Transport Group, LLC*
>*And Ben Petrillo*

>>*/s/ J. Russ Bryant*
>>J. Russ Bryant